## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 03-20155-CIV-SEITZ/MCALILEY

SALVADOR MAGLUTA,

      Plaintiff,

v.

MONICA WETZEL, *et al.*

      Defendants.

_____/

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT, OR ALTERNATIVE SUMMARY JUDGMENT MOTION

THIS MATTER is before the Court on the Motion to Dismiss Third Amended Complaint, or Alternative Summary Judgment Motion of Defendants Monica Wetzel, Ruben Collado, Eduardo Serrano, Martin Ricaboldi,  Kenneth Lee, John Does #'s 1-2, and Jane Does #'s 1-2 ("Summary Judgment Motion") [DE 104].[1]  In this one count *Bivens* action, Plaintiff Salvador Magluta alleges that Defendants violated his procedural due process rights by failing to remove him from administrative detention[2] at the Miami Federal Detention Center in 2002, once the reasons for his initial placement ceased to exist.  Upon review of the motion, the response and the reply thereto, and the record, Defendants' motion to dismiss is granted because Plaintiff has failed to allege facts that demonstrate a hardship or deprivation of benefits atypical and more significant than that of others similarly situated in administrative detention.  In the alternative, because there is no disputed issue of material fact as to

---

[1]  Plaintiff has failed to identify, and serve with a copy of the complaint, John Doe #'s 1-2 and Jane Doe #'s 1-2.  Thus, such individuals are dismissed from this action. Fed. R. Civ. P. 4(m); *Wearing v. Savannah State Univ.*, 132 Fed. Appx. 813, 815 (11th Cir. 2005) (finding that because Appellants did not perfect service on the defendants within the 120-day period mandated by Rule 4(m), the district court did not err in dismissing appellant's claims.)

[2]  The administrative detention facility at the Miami Federal Detention Center is also known as the "Special Housing Unit" or the "SHU."

1

the conditions of or reasons for Plaintiff's confinement, for the reasons discussed below, the Court finds that Defendants are also entitled to a final summary judgment.[3]

## I.    PROCEDURAL BACKGROUND

Plaintiff commenced this action on January 24, 2003.  The case was assigned to Judge K. Michael Moore, who dismissed the case on April 10, 2003, for failure to comply with his Pretrial Order.  (*See* April 10, 2003,  Final Order of Dismissal, DE 5.)  At Plaintiff's request, Judge Moore reopened and transferred the case to the undersigned.  (*See* Order of Transfer, DE 13.)  Thereafter, Plaintiff filed his first amended complaint.  (*See* DE 19.)  In Count I of that complaint, Plaintiff alleged that Defendants violated his procedural due process rights in connection with his September 2000 and April 2002 administrative detention placements by failing to (1) notify him of the reasons for his placement; (2) conduct a hearing within a reasonable time after such placement; (3) conduct periodic post-placement reviews; (4) conduct monthly psychological assessments; and (5) remove him from administrative detention once the reasons for such placement ceased to exist.  In Count II of that complaint, Plaintiff alleged that Defendants violated his procedural due process rights by preventing him from meeting with his attorneys in a contact visiting room and by limiting his access to paralegals and private investigators.  Finally, in Count III, Plaintiff alleged that Defendants violated his procedural due process rights by denying him "social" visits with his father and son.

On September 9, 2005, the Court granted Defendants' motion to dismiss Plaintiff's first amended complaint.  Dismissed with prejudice were Plaintiff's claims that Defendants violated his

---

[3]  A Court may grant summary judgment so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted.  *Burton v. City of Belle Glade*, 178 F.3d 1175, 1205 (11th Cir. 1999.)  Here, such notice is evidenced by Defendants styling the motion in the alternative as one for summary judgment, the fact that the Plaintiff has submitted his own declaration thereby acknowledging that the Court may consider evidence outside the pleadings, and the Court's November 29, 2006 Notice to the Parties advising them of the Court's intention to treat the pending motion as one for summary judgment.

constitutional rights by failing to conduct an initial hearing, post-segregation hearings, and psychological reviews because Plaintiff failed to exhaust his administrative remedies with respect to such claims.  In addition, the Court dismissed without prejudice Plaintiff's  remaining claims for failure to state a claim.  Finally, because Plaintiff failed to effectuate service of process on Defendants Gregory and Thompson, the Court dismissed them as parties to the action.  (*See* Dismissal Order, DE 74.)

On October 14, 2005, Plaintiff filed his Second Amended Complaint ("SAC"), which focused solely on Plaintiff's April 2002 placement in administrative detention.  (SAC, DE 81.)  In Count I, Plaintiff re-alleged that Defendants violated his constitutional rights by failing to conduct an initial hearing, post-segregation hearings, and psychological reviews, all claims that were previously dismissed with prejudice.  Count I also alleged that Defendants violated his constitutional rights by failing to (1) conduct medical assessments; (2) notify him of the initial reasons for his placement; and (3) remove him from administrative detention once the reasons for his initial placement ceased to exist.  In Count II, Plaintiff  alleged that Defendants deprived him of "legal" visits with his father and son, as opposed to "social" visits, as previously alleged.  Plaintiff dropped all other remaining claims asserted in the first amended complaint.

On April 25, 2006, the Court granted Defendants' Motion to Dismiss Second Amended Complaint.  (*See* Second Dismissal Order, DE 98.)  The Court held that Plaintiff's first three Count I claims, namely, failure to conduct an initial in-person hearing, periodic post-placement reviews and psychological assessments, were previously dismissed with prejudice, when the original complaint was dismissed, because Plaintiff failed to exhaust his administrative remedies.  Plaintiff's remaining Count I and Count II claims were dismissed for failure to state a claim upon which relief could be granted. The Court allowed Plaintiff to file a Third Amended Complaint solely as to his claim that Defendants

3

violated his due process rights in April 2002 through early 2003 by failing to remove him from administrative detention once the reasons for such placement ceased to exist.  The Second Dismissal Order directed Plaintiff to plead facts showing how his April 11, 2002 to February 5, 2003 placement in the SHU was an atypical and significant hardship and to "detail the specific role of each remaining Defendant."  On May 19, 2006, Plaintiff filed the operative Third Amended Complaint ("TAC").

## II.____FACTUAL BACKGROUND

While this case arises out of Warden Wetzel's decisions to place and retain Plaintiff in administrative detention, those decisions must be examined within the larger context of various prosecutions involving the Plaintiff.  In August 1999, a grand jury returned a multi-count indictment against Plaintiff charging him with obstruction of justice and money laundering in an earlier extensive drug trafficking case, Case No. 91-6060, in which Plaintiff had been acquitted.  *See United States v. Magluta*, Case No. 99-583-CR-SEITZ/BANDSTRA (the "Obstruction Action"); (TAC ¶ 70.)  Shortly thereafter, Plaintiff was transferred from another facility, where he had been incarcerated for a separate conviction, to the Federal Detention Center in Miami ("FDC Miami") for trial.[4]  (TAC ¶ 72.)  Prior to April 11, 2002, other than for a brief period of time at the end of December 2001 in which he was placed in the SHU for a phone violation, Plaintiff remained in the general population.  (TAC ¶ 79; Plaintiff's August 7, 2006 Declaration ("Plaintiff's Decl.") ¶ 2.)  On April 11, 2002, Defendant Warden Wetzel, warden of FDC Miami, placed Plaintiff in administrative detention in the SHU.  (TAC ¶ 79; Monica Wetzel Undated Declaration ("Wetzel Decl.") ¶ 4.)  The following day, Plaintiff received

---

[4]  Plaintiff's case was severed from that of a majority of co-defendants because he and co-defendant Falcon appealed a denial of his motion to dismiss the indictment on collateral estoppel grounds.  (Obstruction Action, DE 917, 1443, 1459.)  While his appeal was pending, the remaining co-defendants either pled guilty or were convicted of the obstruction of justice and money laundering charges.  (Obstruction Action, DE 1311-1315, 1169, 1174, 1179.)

a copy of the Administrative Detention Order.  (TAC ¶ 84; Kenneth Lee December 6, 2005 Declaration ("Lee Decl.") ¶ 7; Lee Decl. Exh. A.)

Defendant Wetzel listed eight considerations that prompted her decision to place Plaintiff in SHU.  (Wetzel Decl. ¶ 16; Wetzel Decl. Exh. A ¶ 6; Wetzel Decl. Exh. B ¶ 6.)  Those considerations included: (1) that Plaintiff had compromised a staff member by persuading him to allow Plaintiff to make unauthorized phone calls and the investigation of such events was still pending; (2) that Plaintiff was required to be separated from witnesses against whom he might seek reprisal, which required that he be closely monitored; (3) that Plaintiff had historically conducted criminal operations while incarcerated in the Bureau of Prison ("BOP") system as illustrated by the charges in the Obstruction Action; (4) Plaintiff's escape history plus the heightened escape risk due to his daily departures for purposes of legal proceedings in the Obstruction Action; (5) Plaintiff's possible continued engagement in obstruction of justice including jury tampering or interfering with government witnesses, especially in light of the conviction of a former juror for taking a bribe to acquit Plaintiff in the 91-6060 drug case, the discharge of the venire panel in the Obstruction Action because of evidence of jury tampering, and the start of the Obstruction Action; (6) Plaintiff's history of telephone abuse which resulted in him being on telephone restriction for 20 months; (7) Plaintiff's past violations of visiting procedures for having unauthorized contact with a legal visitor; and (8) the need to separate Plaintiff from his father and son to prevent participation in on-going criminal activity, the introduction of contraband into the institution, the formulation of escape attempts, or the facilitation of obstruction of justice activities.  (*Id*.)

Plaintiff maintains, however, that there was only one basis for his placement in SHU and the information supporting such basis came from a source that was discredited a few weeks into Plaintiff's detention in the SHU.  (TAC ¶ 28; Plaintiff's Decl. ¶ 9; Wetzel Decl. Exh. C - June 26, 2002,

"Informal Resolution" Form.)  Both parties acknowledge that the source was discredited but that Plaintiff was not returned to the general population notwithstanding such determination.  (TAC ¶ 85, 92; Lee Decl. Exh. A, June 26, 2002, "Informal Resolution" Form.)

Plaintiff also asserts that he did not receive an initial in-person hearing, periodic reviews, or in-person medical and psychological assessments.  (TAC ¶ 87.)  The documents filed in the record, however, reflect that the custody staff conducted reviews beginning on April 13, 2002 and continuing throughout Plaintiff's placement in SHU, and the psychology staff conducted reviews beginning May 9, 2002 and ending on January 23, 2003.  (Lee Decl. ¶ 7; Lee Decl. Exh. A.)

On April 12, 2002, in the Obstruction Action, Plaintiff also filed an Emergency Motion For Change In Conditions Of Solitary Confinement Or For the Entry of A Rule To Show Cause.  (*See* Obstruction Action, DE 1982.)  On April 16, 2002, the Court held a hearing on that motion, and on April 18, 2002, entered an order denying the motion because Plaintiff failed to demonstrate either that his placement in SHU was atypical or that such placement interfered with his trial preparation.  (*See* Obstruction Action, DE 1994.)  On April 29, 2002, Plaintiff moved for reconsideration, arguing that while in administrative detention, he was denied access to many of the conditions enjoyed by the inmates in the general population.  On May 1, 2002, Plaintiff filed another emergency motion asking to be released from SHU asserting that the investigation showed that his SHU placement was the result of fabricated accusations.  (Obstruction Action, DE 2027.)  The Court denied both of these motions, citing to its previous Order Denying Emergency Motion for Change In Conditions Of Solitary Confinement Or For The Entry Of A Rule To Show Cause.  (Obstruction Action, DE 2041, 2063.)

On May 1, 2002, Plaintiff also filed a Petition for Writ of Habeas Corpus.  (*See Magluta v. Wetzel*, Case No. 02-21335 (the "Habeas Action")).  The Habeas Action charged that Warden Wetzel's decision to place Plaintiff in SHU was punitive in nature and was negatively impacting his cognitive

functioning.  (Habeas Action, DE 1.)  On May 13, 2002,  Magistrate Judge Ted E. Bandstra held a

hearing on Plaintiff's petition and two days later recommended its denial, finding that Warden

Wetzel's decision was "clearly within the jurisdiction of the Bureau of Prisons," and that Plaintiff

failed to exhaust his administrative remedies.[5]  (Habeas Action, DE 10, 11.)  On June 14, 2002, the

Court affirmed the Magistrate Judge's Report and Recommendation and denied the habeas petition for

failure to exhaust administrative remedies.  (Habeas Action, DE 21.)  Thereafter, Plaintiff sought relief

through the use of the BOP administrative procedures.[6]  He filed a BP-9, -10 and -11 seeking to return

to the general population, however, none of his efforts were successful.  (Elizabeth Garcia, June 28,

2006 Declaration ("Garcia Decl.) ¶ 4-8.)

Between April 11, 2002 and August 15, 2002, Plaintiff was in trial for approximately 85 days,

and also attended several pretrial hearings.  (*See* Obstruction Action, DEs 2008-2344; Wetzel Decl.

¶ 10.) On August 15, a jury found Plaintiff guilty on 13 counts of the indictment, including obstruction

---

[5] As part of the Habeas Action, Associate Warden Robert Thompson filed an affidavit setting forth the reasons for Plaintiff's placement in SHU.  Specifically, on May 10, 2002, Thompson testified that Plaintiff posed a significant security risk based on the following: (1) Plaintiff's status as the leader of a major drug organization; (2) Plaintiff's ability to exert influence over the inmate population and staff; (3) Plaintiff's escape history; (4) Plaintiff's possible continued engagement in obstruction of justice and jury tampering; (5) the need to physically separate Plaintiff from other inmates testifying against him to ensure their safety; and  (6) the need to closely monitor Plaintiff and prevent unauthorized telephone calls.  (*See* Habeas Action, DE 8.)

[6] Prior to filing these administrative requests for relief, Plaintiff attempted informal resolution through his counselor on June 26, 2002.  (Garcia Decl. ¶ 4.)  On that date his counselor noted he was not able to informally resolve Plaintiff's request to be placed back in to the general population.  (*Id.*)  On June 27, 2002, FDC Miami received Plaintiff's BP-9 dated June 21, 2002, in which he asked the Warden to return him to the general population. (*Id.* ¶ 5.)  The Warden denied this administrative remedy on July 8, 2002.  (*Id.*)  On September 12, 2002, the BOP's Southeast Regional Office received Plaintiff's BP-10 dated July 13, 2002, in which Plaintiff appealed the Warden's denial of his BP-9.  (*Id.* ¶ 6.)  The Regional Director denied this administrative remedy on October 11, 2002.  (*Id.*)  On December 6, 2002, the BOP's Central Office received Plaintiff's BP-11 appealing the Regional Director's denial of Plaintiff's BP-10.  (*Id.* ¶ 7.)  On December 6, 2002, the Central Office rejected this remedy as untimely and sent Plaintiff a notice advising him to provide verification from staff that the untimely filing was not his fault.  (*Id.*)  On February 10, 2003, the BOP's Central Office received Plaintiff's BP-11 dated February 3, 2003 in which he appealed the denial of his BP-10.  (*Id.* ¶ 8.)  By this time, Plaintiff had been transferred from FDC Miami.  (*Id.*)  On March 26, 2003, the Central Office responded to Plaintiff noting the Warden and Regional Director had adequately responded to his BP-9 and -10, concurring with those responses, and noting Plaintiff's transfer.  (*Id.*)

of justice, witness bribery, jury bribery and money laundering.  (*See* Obstruction Action, DE 232).  The Court sentenced Plaintiff on January 23, 2003, following four days of a contested evidentiary hearing. (Obstruction Action, DE 2696.)  He was then transferred on February 5, 2003 to his designated facility to begin serving his sentence.  Plaintiff was held in the SHU as a pretrial detainee from April 11, 2002 until August 15, 2002 ("Pre-Conviction SHU Period") and as a convicted felon from August 16, 2002 to February 5, 2003 ("Post-Conviction SHU Period).  (TAC ¶¶ 79, 97; Wetzel Decl. ¶¶ 8, 11.)

In his TAC, Plaintiff asserts that his detention in SHU was "atypical" because he was deprived of the following: (1) the opportunity to participate in joint sacraments and prayers and other religious services, (2) hot meals, (3) choice of meals, (4) regular showers, (5) shaving equipment, (6) legal calls, (7) social calls, (8) access to a desk and chair to work on legal documents, (9) access to recreation television, (10) normal visiting hours and access, (11) the ability to talk with other inmates, (12) exercise, (13) visitation with minor children, (14) telephone calls, (15) the ability to purchase commissary items and (16) adequate hygienic conditions.  (*See* TAC ¶ 53-65.)

## III.   STANDARD OF REVIEW

Because the Government's motion is styled as a motion to dismiss and for summary judgment, the Court must address both.  A court will not grant a motion to dismiss unless the plaintiff fails to allege any facts that would entitle the plaintiff to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957).[7] When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true and draw all reasonable inferences in the non-movant's favor.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *St. Joseph's Hosp., Inc. v. Hosp.*

---

[7]  The Eleventh Circuit imposes "heightened pleading requirements" for § 1983 cases which involve individuals entitled to assert qualified immunity.  *Swann v. S. Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004) (citing *Leatherman v. Tarrant County*, 507 U.S. 163 (1993)).

*Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986).

A summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## IV.   ANALYSIS

The essence of Plaintiff's present complaint is as follows. Plaintiff claims that he was deprived of a Fifth Amendment[8] liberty interest when Warden Wetzel and the other Defendants[9] failed to return

---

[8] Plaintiff also alleges that Defendants violated his Sixth Amendment rights under the Constitution. (TAC at 1.) Plaintiff fails to allege, however, any facts regarding how Defendants may have violated Plaintiff's Sixth Amendment rights. Moreover, Plaintiff has not alleged that any of the Defendants had any role in Plaintiff's criminal trial, for which a Sixth Amendment claim is appropriate. (*See* TAC.) Therefore, summary judgment is granted in favor of Defendants for any and all claims made pursuant to the Sixth Amendment. Fed. R. Civ. P. 56(e); *Celotex v. Catrett*, 477 U.S. 322 (finding summary judgment is appropriate where the non-moving party fails to make a showing sufficient to establish the existence of an element essential to the their case and on which the party will bear the burden of proof at trial.)

[9] Plaintiff has failed to establish a genuine dispute of fact as to whether Warden Wetzel was the only defendant who made the ultimate decision as to whether Plaintiff was to be returned to the general population. Under Rule 56(e), an affidavit opposing summary judgment "shall be made on personal knowledge," and the adverse party "may not rest upon mere allegations or denials of the adverse party's pleading . . . and must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
   Plaintiff alleges in his TAC that Defendants Lee, Gregory, Collado and Serrano served in the position as Segregation Review Official ("SRO") as defined in 28 CFR § 541.22 and that none of these Defendants "initiated or ensured material compliance with the agency's procedural mandates including returning [Plaintiff] to the general population once the reasons for being there ceased to exist." (TAC ¶ 25.) Somewhat inconsistently, Plaintiff also states that it was Warden Wetzel who "failed to restore [Plaintiff] to general population once it became clear that reasons for his placement ceased to exist" and that, as warden of FDC Miami, Wetzel was responsible for (1)

him to the general population of the prison after the reasons for his SHU placement ceased to exist. (TAC ¶¶ 17-20.)  Plaintiff asserts that 28 CFR § 541.22 "creates a liberty interest based on Plaintiff's status as a pretrial detainee or convicted prisoner protecting against his removal from the general population for 'administrative' reasons without due process."  (TAC ¶¶ 20-27.)  Plaintiff also asserts that his detention in SHU constituted "atypical and significant hardships."  (TAC ¶¶ 51-65.)  Finally, he asserts that he did not receive due process because he did not receive the process enumerated in agency regulations.  (TAC ¶¶ 87-94.)

In response, Defendants contend that Plaintiff fails to allege that his SHU conditions constituted an "atypical and significant hardship" as compared to *other SHU detainees*, and even if he did, such conditions do not amount to the deprivation of a  liberty interest.  (Summary Judgment Motion at 19-22.)  Further, Defendants assert that even if Plaintiff was deprived of a liberty interest, Plaintiff was provided adequate due process.  (*Id.* at 22-27.)  Defendants also maintain that Plaintiff was not deprived of a liberty interest because the reasons for his placement in SHU never ceased to exist.  (*Id.* at 17-18.)  Finally, Defendants claim that they are entitled to qualified immunity.  (*Id.* at 27-29.)

---

providing for the care, safekeeping and subsistence of the Plaintiff; (2) overseeing the daily operations of FDC Miami; and (3) training and supervising her employees.  (TAC ¶¶ 5-6, 17, 43.)  Defendants, on the other hand, have submitted Warden Wetzel's declaration that she "was the sole person responsible for the decision to keep Plaintiff in the SHU until his transfer" and that "Defendants Collado, Serrano, Ricaboldi and Lee had no control over" such decision.  (Wetzel Decl. ¶¶ 5-6.)

In response to Defendant Wetzel's declaration, Plaintiff only filed his own declaration stating that he disagrees that Warden Wetzel was the sole person responsible for maintaining Plaintiff in SHU, and that Defendants Collado,  Serrano, Ricaboldi and Lee "had a degree of input into the decision-making processes that controlled [his] *placement* in SHU."  (Plaintiff's Decl. ¶ 18-19) (emphasis added).  Thus, Plaintiff only offers denials of Defendants' evidence and has not submitted any specific facts based on his own personal knowledge to support his contention that such Defendants had any involvement in *retaining* Plaintiff in the SHU.  Plaintiff's denials are insufficient as a matter of law to create a triable issue on whether Warden Wetzel had sole responsibility for the final decision to continue Plaintiff's detention in the SHU.  Thus, Plaintiff has not sufficiently refuted that Defendants Collado, Serrano, Ricaboldi and Lee had no control over Plaintiff's retention in the SHU and, therefore, Defendants Collado, Serrano, Ricaboldi and Lee are entitled to summary judgment.

**A.     Plaintiff Has Failed To Plead A Denial Of His Procedural
Due Process Rights Under The Fifth Amendment**

There can be no procedural due process violation without the deprivation of a protectable liberty or property interest.  *See Magluta v. Samples*, 375 F.3d 1269, 1279 (11th Cir. 2004). Accordingly, the Plaintiff must first establish that a decision to place him in (or continue to hold him in) administrative detention resulted in the deprivation of such liberty interest.  *Id.*  Where the asserted interest is protected by the Due Process Clause, the additional question raised is what process is due to protect that interest.  *See Kentucky v. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Thus, to maintain his claim, Plaintiff must demonstrate both a protected liberty interest and a denial of sufficient process in the deprivation of that interest.

The Eleventh Circuit has identified two circumstances in which a prisoner can be further deprived of his liberty so as to require due process.[10]  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court." *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  "The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit imposes 'atypical and significant hardship' on the inmate in relation to the ordinary incidents of prison life."  *Id.*  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.  *Id.*  Because Plaintiff's claims rest on 28 C.F.R. § 541.22, a state-created administrative policy, the second situation is present here. (*See* TAC ¶ 37.)  The pivotal issue then is whether Warden Wetzel's failure to return Plaintiff to the general population after the reason(s) for his placement in the SHU ceased to exist imposed "atypical

_____

[10]  Plaintiff was deprived of liberty when the decision was made to detain him pending his obstruction trial but that deprivation is not at issue in this lawsuit.  *See Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

and significant hardship" on the Plaintiff in relation to the ordinary incidents of prison life.  *See Bass*, 170 F.3d at 1318.

      1.    Plaintiff Must Allege That He Suffered "Atypical And Significant Hardship" In Comparison To Other Administrative Detainees.

Assuming *arguendo* that the reasons for Plaintiffs administrative detention did cease to exist,[11] Plaintiff must allege facts showing that his confinement constituted an "atypical and significant hardship."  *Sandin*, 515 U.S. at 484.  While the Eleventh Circuit has not addressed whether a plaintiff must allege that his conditions of confinement constituted "atypical and significant hardship" compared to prisoners in the general population or other prisoners in administrative detention, *Magluta v. Samples*, 2006 WL 1071844, * 7 (11th Cir. April 20, 2006), it would appear that the law requires a comparison of similarly placed inmates, i.e. other prisoners in administrative detention.  In *Sandin*, the plaintiff alleged that Hawaii state prison officials had deprived him of a liberty interest by confining him to disciplinary segregation for 30 days.  515 U.S. at 475-76.  The Supreme Court denied his claim because his confinement "did not exceed similar but totally discretionary, confinement in either duration or degree of restriction."  *Id.* at 486.  The majority of jurisdictions have held that this means to establish a liberty interest a prisoner must allege that his conditions of confinement  were atypical and significant when compared to *other administrative detainees*.  *See Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997); *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996); *Magluta,* 2006 WL 1071844, * 7.  However, other courts have compared the prisoner's terms of detention not with the other inmates in administrative segregation, but instead with the conditions in the general population.

---

[11]  In Section B *infra,* the Court addresses the issues relating to whether the reasons for Plaintiffs placement in SHU ceased to exist.  The uncontroverted evidence demonstrates that such reasons never abated during Plaintiff's entire administrative detention.

*See Sealey v. Giltner*, 197 F.3d 578, 586 (2d. Cir. 1999); *Hatch v. District of Columbia*, 184 F.3d 846, 856 (D.C. Cir. 1999); *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997).[12]

This Court joins the majority of jurisdictions that have concluded that to establish a liberty interest, a prisoner must show that his conditions of confinement were atypical and significant when compared to other administrative detainees. This decision is based on both the purpose and clear language of *Sandin*. First, *Sandin* underscored the principle that the federal courts should not be involved in the day-to-day management of the prison system, "often squandering judicial resources with little offsetting benefit to anyone." *Sandin*, 515 U.S. at 482. Second, the Supreme Court's holding in *Sandin* specifically states that the plaintiff's punishment in that case "mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *Id.* at 486. In his TAC, Plaintiff failed to allege facts showing that his conditions of confinement constituted "atypical or significant hardship" when compared to other administrative detainees. Thus, Defendants' motion to dismiss must be granted. However, because this case is on its third amended complaint and the parties have submitted an abundance of evidence outside of the pleadings, the Court shall proceed to treat Defendants' motion as one for summary judgment.

The record is uncontroverted that Plaintiff's conditions of confinement were the same as other prisoners in administrative detention. Defendants assert that during his Pre-Conviction SHU Period, Plaintiff "experienced the same conditions as experienced by other similarly situated pretrial detainees in the SHU, including Plaintiff's co-defendant Augusto Guillermo 'Willie' Falcon, who was also placed in SHU." (Wetzel Decl. ¶ 9.) Further, Plaintiff was not actually in the SHU when appearing

---

[12] All these cited cases involved convicted prisoners rather than pretrial detainees. However, the Supreme Court has clearly stated that pretrial detainees can cause just as great a risk to prison security, and thus, should be treated no differently in reviewing challenged security practices. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Therefore, there is no need to distinguish between Plaintiff's Pre-Conviction SHU Period and his Post-Conviction SHU Period in ascertaining any deprivation of a liberty interest.

at trial for at least 85 of his total 128 days in pre-conviction detention.  (Wetzel Decl. ¶ 10; Wetzel

Decl. Exh. C - "Visiting History for Inmate Name: Magluta, Salvador.")  Also, Plaintiff had legal visits

everyday during his pre-conviction detention which meant that he was out of his cell and in a visitation

room for hours at a time, including during the evening.  (Wetzel Decl. ¶ 10.)  During his Post-

Conviction SHU Period, Plaintiff also experienced the same conditions provided to other similarly

situated convicted felons.  (Wetzel Decl. ¶ 12.)  Further, similar to his pre-conviction period, Plaintiff

had frequent legal visits which required him to be out of his cell in a visitation room for many hours

of the day.  (Wetzel Decl. ¶ 12.)

      In his pleadings and his own declaration, Plaintiff has failed to state how his conditions of

confinement differed from other prisoners in administrative detention, much less show that they were

atypical.  (Plaintiff's Decl. ¶ 27-28.)  Plaintiff states that he "cannot be reasonably expected to show,

absent discovery, and absent privacy waivers from other similarly situated pre-trial detainees, that the

conditions of [his] confinement in SHU were different from other pre-trial detainees."  (*Id*. ¶ 27.)  Yet,

Plaintiff has failed to state why he or his counsel did not request discovery regarding this issue in light

of the Court's specific instruction to specify with particularity the discovery that Plaintiff may need

regarding this issue.  (Second Dismissal Order, DE 98 at 13.)  Therefore, because there is no record

evidence demonstrating that Plaintiff's conditions of confinement differed from other prisoners housed

in administrative detention, Plaintiff has not satisfied the first prong of his claim that he was deprived

of a liberty interest in violation of his Constitutional rights.[13]

---

[13]  Even if Plaintiff had alleged facts or produced evidence that his conditions of confinement constituted
"atypical and significant hardships" when compared to other administrative detainees, Plaintiff does not enjoy a
liberty interest in the religious, visitation, phone and other privileges described in his TAC.  (TAC ¶¶ 53-64.); *see
also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (finding that withdrawal or limitation of religious rights
is justified by the considerations underlying our penal system); *Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 525
(11th Cir. 1994) (finding that inmates do not have an absolute right to visitation and that such is subject to the prison
authorities' discretion); *Dixon v. Campbell*, 2006 WL 1214813, * 2 (M.D. Ala., May 4, 2006) (finding that the loss
of visitation, phone and store privileges were not punishments that constituted "atypical and significant hardships in

2.     Plaintiff Was Afforded Due Process Of The Law.

Even assuming that Plaintiff could meet the factual predicate to support a deprivation of a liberty interest by the conditions of his confinement, he must also demonstrate that he was not afforded due process of the law.  The determination of whether the process was sufficient, entails a two part inquiry, as well as a balancing of competing interests at stake in the case.  *Hewitt v. Helms*, 459 U.S. 460, 473 (1983).  The first part of the inquiry asks whether the prisoner, when transferred to administrative confinement, received "an informal, nonadversary evidentiary review of the information supporting Plaintiff's administrative confinement, including whatever statement Plaintiff wished to submit, within a reasonable time after confinement."  *Id.* at 472.  For a prison inmate, process requires that he "merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.  Ordinarily a written statement by the inmate will accomplish this purpose ...."  *Id.* at 476.  In determining a "reasonable time," a court must consider an inmate's "relatively insubstantial private interest" coupled with the prison officials' traditionally broad discretion.  *Id.*  The second part of the inquiry requires, following this initial determination, that the prison official engage in some sort of periodic review.  *Id.* at 477 n. 9.  Neither of these prongs requires any highly structured proof because the placement decision continues to be a highly subjective one, based on the prison officials knowledge of the "prison conditions and tension." [14]  *Id.*

relation to the ordinary incidents of prison life.")

[14]  Plaintiff argues that Defendants are required to provide the full panoply of procedural rights listed under 26 C.F.R. § 541.22.  (TAC at ¶¶ 90-99.)  The Eleventh Circuit has expressly held, however, that "the procedural requirements set out in the regulation are not themselves constitutional mandates.  *Magluta*, 375 F.3d at 1279 n. 7.  The appellate court concluded that only "fairly minimal due process was required."  *Id.* (citing *Hewitt,* 459 U.S. at 472-477).

Here, the undisputed evidence demonstrates that Plaintiff was afforded due process of the law. Plaintiff received a copy of his administrative detention order on April 12, 2002, at 2:40 p.m. (Lee Dec. ¶ 7; Lee Decl. Exh. A.) Also, Plaintiff received a copy of the Thompson declaration which laid out in detail the Warden's security concerns about Plaintiff. (Thompson Decl. ¶¶ 4-7.) Further, the custody staff conducted reviews beginning on April 13, 2002, and continuing throughout Plaintiff's placement in SHU. (Lee Decl. ¶ 7; Lee Decl. Exh. A.) Similarly, the psychology staff conducted reviews beginning on May 9, 2002 and ending on January 23, 2003. (*Id.*) Also, in addition to the routine reviews of the custody staff and psychology staff, Warden Wetzel visited the SHU weekly and made herself available to every SHU resident to discuss any concerns or issues that each resident may have had. (Wetzel Decl. ¶ 13.) Moreover, each of Plaintiff's applications for relief pursuant to the BOP administrative procedures was reviewed and ruled upon consistent with BOP policies. (Wetzel Dec. ¶ 13; Wetzel Decl. Exh. C.) Finally, above and beyond the requirements of *Hewitt*, Plaintiff also was granted hearings as a part of the Obstruction Action on April 16, 2002 and the Habeas Action on May 13, 2002. (*See* Obstruction Action, DE 1994; Habeas Action, DE 10.) Thus, Plaintiff was afforded more than initial notice and on-going reviews regarding his placement in the SHU.

The final step in examining the sufficiency of the process provided to the prisoner is to engage in a *Matthews*[15] balancing test, weighing "the private interests at stake in the government decision, the governmental interests involved, and the value of procedural requirements. *Sheley v. Dugger*, 833 F.2d 1420, 1426 (11th Cir. 1987) (quoting *Hewitt*, 459 U.S. at 473.) An inmate's interest, while more than minimal, must be evaluated within the context of the prison system and its attendant curtailment of liberties. *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 2385 (2005). In contrast, the

---

[15] *See Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) (ruling that the constitutional sufficiency of administrative procedures is determined by examining three distinct factors discussed *infra*).

governmental interests in safety and security are of great importance.  *Hewitt*, 459 U.S. at 473 (finding that the safety of the institution's guards and inmates is perhaps the most fundamental responsibility of the prison administration).

Applying *Matthews* to this case, Plaintiff's private interests are minimal as he was "merely transferred from one extremely restricted environment to another even more confined environment." *See Hewitt*, 459 U.S. at 473.  Further, as mentioned above, Plaintiff spent much of his administrative detention period at pre-trial, trial and post-trial proceedings or in the legal visitation room.  (Wetzel Decl. ¶¶ 10, 12).  The BOP interests in placing Plaintiff in the SHU, in contrast, are quite substantial. As discussed above, Plaintiff had shown the ability to exert control over staff at the facility and an investigation was pending as to whether Plaintiff had compromised a staff member.  Plaintiff needed to be separated from co-defendants and trial witnesses so as to prevent any reprisal by Plaintiff and he needed to be closely monitored to protect against such reprisals.  As the jury ultimately found beyond a reasonable doubt, Plaintiff had conducted criminal operations from the various BOP facilities that compromised his 91-6060 trial and such activities needed to be prevented during the on-going Obstruction Action trial.  Plaintiff also had a history of unauthorized use of the phones to communicate with individuals outside the prison.  He had an escape history and was considered a higher escape risk. He had also violated visiting procedures by having unauthorized contact with a "legal" visitor.  Thus, the BOP interests in the safety and security of its staff, inmates and the public at large far outweighed the Plaintiff's private interests.

Finally, Plaintiff has not shown that additional procedural mechanisms would be of value to him.  Plaintiff also received hearings as part of both the Obstruction Action and the Habeas Action although the relief Plaintiff sought was denied.  (*See* Obstruction Action, DE 1994; Habeas Action, DE 10.)  Furthermore, Plaintiff failed to register complaints through the BOP administrative process

regarding the majority of the alleged conditions of confinement in his TAC.[16]  (Wetzel Decl. ¶14; TAC ¶¶ 53-64.)  Thus, Plaintiff did not comply with all the administrative procedures already in place in the prison system, and he has failed to show that additional procedures could or would be beneficial.  Therefore, applying the *Mathews* balancing test to the facts of this case demonstrates that Plaintiff was afforded sufficient due process.

### B.   The Reasons For Plaintiff's Placement In SHU Never Ceased To Exist.

Even if Plaintiff had sufficiently alleged that his confinement imposed "atypical and significant hardship" when compared to other administrative detainees or that he was denied sufficient due process, Plaintiff must also demonstrate that the reasons for his placement in the SHU abated while he was housed there.  He has not so.  Defendants have submitted evidence indicating that the reasons for Plaintiff's confinement in SHU did not abate for the total duration of Plaintiff's detention from April 11, 2002 to February 5, 2005.  (Wetzel Decl. ¶ 16; Wetzel Decl. Exh. C.)  The un-rebutted evidence is that:

- Plaintiff had compromised a staff member by persuading him to allow Plaintiff to make unauthorized phone calls and  the investigation confirming such information was not completed until January 2003 (Wetzel Decl. ¶ 17.)

- Plaintiff was required to be separated from witnesses against whom Plaintiff might seek reprisal.  Also, Plaintiff needed to be closely monitored to ensure no actions were taken in furtherance of such reprisals.  (Wetzel Decl. ¶¶ 19-20.)

- Plaintiff had historically conducted criminal operations while incarcerated in the BOP system.  The Obstruction Action indictment charged Plaintiff with obstruction of justice and money laundering activities while he was incarcerated at various BOP facilities.  (Wetzel Decl. ¶ 21.)

---

[16]  Plaintiff never complained about the following conditions which he included in his TAC: he did not receive hot meals, choice of meals, regular showers or access to television; he was denied commissary privileges, shaving equipment, legal calls, social calls, visitation (including with minors), conversation with other inmates, access to a desk and a chair, normal visiting hours; that he suffered inferior hygienic conditions; or that he was denied ability to walk and exercise.  (Wetzel Decl. ¶ 14.)

- Plaintiff had an escape history and at the time was considered a heightened escape risk because of his required daily departures from the institution to attend pre-trial, trial and post-trial legal proceedings. (Wetzel Decl. Exh. A ¶ 6.)

- There were concerns that Plaintiff continued to engage in obstruction of justice by engaging in jury tampering or interfering with government witnesses. At the time, a former juror had been convicted for taking a bribe to effect Plaintiff's acquittal in 91-6060 and charges were pending against Plaintiff for jury tampering. (Wetzel Decl. Exh. A ¶ 6.)

- Plaintiff had a history of telephone abuse. In the past, Plaintiff had other inmates put telephone numbers of interest to him on their telephone calling list. (Wetzel Decl. Exh. A ¶ 6.)

- Plaintiff had violated visiting procedures in the past by having unauthorized contact with a "legal" visitor. (Wetzel Decl. Exh. A ¶ 6.)

- Plaintiff's visitation with his father and son had to be restricted because such individuals were involved with the Magluta/Falcon organization and through visitation Plaintiff could have engaged in on-going criminal activity as well as activity that jeopardized the security of the institution such as the introduction of contraband, the formulation of escape plans and the exchange of messages that could result in an obstruction of justice. (Wetzel Decl. Exh. A ¶ 6.)

In an attempt to rebut Defendants' evidence, Plaintiff filed his own declaration in which he denies that there were reasons for his placement in the SHU other than the unspecified discredited information. Plaintiff also denies that there were variety of security concerns that never abated during his entire tenure in the SHU. (Plaintiff's Decl. ¶ 17.) Plaintiff further states that Defendant Collado advised him that he was being placed in the SHU "as a result of a telephone call" and that such information was subsequently discredited. (Plaintiff's Decl. ¶¶ 7-9.) Additionally, Plaintiff refers to the BOP response to his BP-8 ½ which confirms that one of the allegations used against him was discredited. (Plaintiff's Decl. ¶ 17.) Finally, Plaintiff denies each of Defendants' reasons for his placement in the SHU. (Plaintiff's Decl. ¶¶ 20-24.)

Plaintiff offers no affirmative evidence other than his simple denials of Defendants' statement

of facts regarding the reasons for his placement and on-going detention in the SHU.[17]  The BOP response to which Plaintiff refers does not state that there were no other reasons for Plaintiff's placement in the SHU.  (Wetzel. Decl.  Exh. C.)  Thus, Plaintiff has failed to rebut Defendants' assertion that the reasons for Plaintiff's placement in the SHU never ceased to exist for the entire duration of his administrative detention.[18]

## V.      CONCLUSION

For the reasons stated above, it is hereby

ORDERED that

(1)      Defendants' motion to dismiss [DE 104] is GRANTED.

(2)      Defendants' motion for summary judgment [DE 104] is GRANTED.

(2)      All pending motions not otherwise ruled upon are DENIED AS MOOT.

(3)      This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 29th day of December, 2006.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    Counsel of Record

---

[17]  Further, Plaintiff does not base any of his declaration assertions regarding his on-going detention in the SHU on personal knowledge, as required by Fed. R. Civ. P. 56(e).

[18]  Because the Court concludes that Plaintiff was neither deprived of a liberty interest nor denied adequate due process, the Court need not address the issue of whether Defendant Wetzel is entitled to qualified immunity.